UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) CRIMINAL NO. 03-10375-MLW |
| | ) |
| JODY DIXON | ) |

GOVERNMENT'S SENTENCING MEMORANDUM

The government respectfully submits this memorandum in support of its position that, notwithstanding the decision of the Supreme Court in Blakely v. Washington, 2004 WL 1402697 (June 24, 2004), the United States Sentencing Guidelines remain valid. In the alternative, in the event this Court determines that Blakely precludes judicial factfinding under the Guidelines that serves to increase the defendant's base offense level, and hence his guidelines sentencing range, this Court should conclude that the Guidelines as a whole must be invalidated as a binding set of rules governing sentences that must be imposed.

I. **BLAKELY DOES NOT INVALIDATE THE FEDERAL SENTENCING GUIDELINES**

A. **This Court is Bound by Supreme Court and Circuit Court Precedent Upholding the Guidelines.**

In Blakely, the Supreme Court applied the rule of Apprendi v. New Jersey, 530 U.S. 466, 490 (2000), to invalidate a sentencing enhancement, imposed pursuant to state law, that increased the sentence beyond the range authorized by Washington state's statutory sentencing guidelines regime. The Court explained that, because the facts supporting the enhancement were "neither admitted by [the defendant] nor found by a jury," the

sentence violated the Sixth Amendment right to trial by jury. 2004 WL 1402697, at *4.

Blakely did not invalidate the federal sentencing Guidelines, nor did it hold that its rule applies to the Guidelines. See 2004 WL 142697, at *6 n.9 ("[t]he Federal Guidelines are not before us, and we express no opinion on them"); see also Apprendi, 530 U.S. at 497 n.21 (same). Indeed, in Apprendi itself, the Court expressed no view on the Guidelines beyond "what this Court has already held." Id. (citing Edwards v. United States, 523 U.S. 511, 515 (1998)).

What the Court has "already held" about the Guidelines therefore continues to provide the governing principle for this court -- and Supreme Court rulings have consistently upheld the Guidelines against constitutional attack and underscored their unique status within our constitutional scheme. See, e.g., Mistretta v. United States, 488 U.S. 361 (1989). Indeed, the Court has found that so long as a sentence does not exceed the statutory maximums established by Congress for the offense of conviction, a Guidelines sentence can (in fact, sometimes must) be based on judge-found conduct not proved to a jury, see Edwards v. United States, 523 U.S. 511, 514-15 (1998); conduct not charged in the indictment, see Witte v. United States, 515 U.S. 389, 399-401 (1995); and conduct of which a defendant is acquitted but is established by a preponderance of the evidence.

2

See United States v. Watts, 519 U.S. 148, 156-57 (1997) (per curiam).  Moreover, the Court has explicitly held that courts are bound not only by the Guidelines, but by their policy statements and commentary as well.  Stinson v. United States, 508 U.S. 36, 42 (1993).

This Court is required to follow these precedents.  See State Oil Co. v. Khan, 522 U.S. 3, 20 (1997) ("it is [the Supreme Court's] prerogative alone to overrule one of its precedents"); Agostini v. Felton, 521 U.S. 203, 237 (1997) (courts of appeals must leave to "this Court the prerogative of overruling its own decisions," even if such a decision "appears to rest on reasons rejected in some other line of decisions") (quotations, citations omitted).  Indeed, every court of appeals recognizes that it is obliged to follow Supreme Court precedent, even when that precedent may appear to be undermined by subsequent Supreme Court decisions.[1]

---

[1]      See, e.g., Figueroa v. Rivera, 147 F.3d 77, 81 (1st Cir. 1998) (noting that the Supreme Court has "admonished the lower federal courts to follow its directly applicable precedent, even if that precedent appears weakened by pronouncements in its subsequent decisions"); see also Perez v. Greiner, 296 F.3d 123, 125 n.4 (2d Cir. 2002); Sierra v. Romaine, 347 F.3d 559, 575 (3d Cir. 2003); Fisher v. King, 232 F.3d 391, 397 (4th Cir. 2000) ; United States v. Rodriquez-Montelongo, 263 F.3d 429, 434 (5th Cir. 2001); United States v. Talley, 275 F.3d 560, 565 (6th Cir. 2001); Scheiber v. Dolby Laboratories, Inc., 293 F.3d 1014, 1018 (7th Cir. 2002); United States v. Maynie, 257 F.3d 908, 918 (8th Cir. 2001); United States v. Pacheco-Zepeda, 234 F.3d 411, 414 (9th Cir. 2000); Conover v. Aetna US Health Care, Inc., 320 F.3d 1076, 1079 n.2 (10th Cir. 2003); Florida League of Prof'l Lobbyists v. Meggs, 87 F.3d 457, 462 (11th Cir. 1996); U.S. Air

Furthermore, the courts of appeals have also unanimously held that the federal Guidelines do not violate the rule of Apprendi.[2]  These decisions, too, bind the district courts and the individual panels of the courts of appeals.[3]  This Court,

---

Tour Ass'n v. F.A.A., 298 F.3d 997, 1012, n.8 (D.C. Cir. 2002).

[2]  See, e.g., United States v. Casas, 356 F.3d 104, 128 (1st Cir. 2004); United States v. Luciano, 311 F.3d 146, 153 (2d Cir. 2002); United States v. Parmelee, 319 F.3d 583, 592 (3d Cir. 2003); United States v. Cannady, 283 F.3d 641, 649 & n.7 (4th Cir. 2002); United States v. Floyd, 343 F.3d 363, 372 (5th Cir. 2003); United States v. Tarwater, 308 F.3d 494, 517 (6th Cir. 2002); United States v. Merritt, 361 F.3d 1005, 1015 (7th Cir. 2004); United States v. Banks, 340 F.3d 683, 684-65 (8th Cir. 2003); United States v. Ochao, 311 F.3d 1133, 1134-36 (9th Cir. 2002); United States v. Mendez-Zamora, 296 F.3d 1013, 1020 (10th Cir. 2002); United States v. Ortiz, 318 F.3d 1030, 1039 (11th Cir. 2003); United States v. Pettigrew, 346 F.3d 1139, 1147 n. 18 (D.C. Cir. 2003).

[3]  See, e.g., Lee v. C.I.R., 155 F.3d 584, 587 (2d Cir. 1998) ("[O]ne panel of this circuit will not overrule another; panels are to be overruled only by the court en banc"); Bollman Hat Co. v. Root, 112 F.3d 113, 117 (3d Cir. 1997) ("[A] panel of our court cannot overrule a prior published decision.  Only the court en banc may do this.") (footnote and citation omitted); Booth v. Maryland, 327 F.3d 377, 383 (4th Cir. 2003) ("[A] panel of this circuit cannot overrule a prior panel. Only the en banc court can do that."); Shell Offshore, Inc. v. Director, Dep't of Labor Office of Workers' Compensation Programs, 122 F.3d 312, 316 (5th Cir. 1997) ("[O]nly an en banc court can overrule or change what a previous panel has held."); Cooper v. MRM Investment Co., 367 F.3d 493, 507 (6th Cir. 2004) ("[O]nly the Court sitting en banc may overrule published circuit precedent, absent an intervening Supreme Court decision or a change in the applicable law."); Gipson v. KAS Snacktime Co., 171 F.3d 574, 576 n. 3 (8th Cir. 1999) (panel decisions are precedent in the circuit "[u]ntil modified or overruled by the court en banc"); Murray v. Cable Nat. Broadcasting Co., 86 F.3d 858, 860 (9th Cir. 1996) ("[O]nly a panel sitting en banc may overturn existing Ninth Circuit precedent."); Dubuc v. Johnson, 314 F.3d 1205, 1209 (10th Cir. 2003) ("Only an en banc panel may overrule a prior panel's decision."); Cargill v. Turpin, 120 F.3d 1366, 1386 (11th Cir.

thus, may not take it upon itself to cast aside the Guidelines system and the integrated sentencing process it mandates.

**B.    The Supreme Court Has Consistently Upheld the Constitutionality of Guidelines Sentences Based on Judge-Found Facts.**

The Sentencing Reform Act of 1984 significantly altered the way in which district courts sentence persons convicted of federal crimes.  Before the Act, Congress defined broad sentencing ranges, and then left it to individual judges to set sentences within those ranges on a case-by-case basis.  See Mistretta, 488 U.S. at 364 (pre-Guidelines, "Congress delegated almost unfettered discretion to the sentencing judge to determine what the sentence should be within the customarily wide range").  With the Act, Congress delegated the authority to channel that judicial discretion to the Sentencing Commission, an "independent commission in the judicial branch of the United States."  28

_____

1997) ("[O]nly the Supreme Court or this court sitting en banc can judicially overrule a prior panel decision."); National Min. Ass'n v. Fowler, 324 F.3d 752, 759 (D.C. Cir. 2003) ("panels are bound to follow circuit precedents until en banc court or Supreme Court overrules those precedents"); see also United States v. Chien, 266 F.3d 1, 10 (1st Cir. 2001) (a prior panel decision shall not be disturbed absent either the occurrence of a controlling intervening event (e.g., a Supreme Court opinion on the point; a ruling of the circuit, sitting en banc; or a statutory overruling) or, in extremely rare circumstances, where non-controlling but persuasive case law suggests such a course); Brooks v. Walls, 279 F.3d 518, 522 (7th Cir. 2002) ("One panel of this court cannot overrule another implicitly.  Overruling requires recognition of the decision to be undone and circulation to the full court under Circuit Rule 40(e).").

U.S.C. 991(a); see <u>Mistretta</u>, 488 U.S. at 385.  Congress charged
the Commission with devising a system of sentencing ranges for
categories of offenses and defendants according to various
specified and unspecified factors.  See 28 U.S.C. 994(a)-(e).[4]
In response, the Commission chose to create a system requiring a
court to consider a defendant's "real" offense (<u>i.e.</u>, his actual
conduct), even if that conduct is not part of the charged offense
of conviction.  See Guidelines Manual Ch. 1, Pt. A, intro.
comment. 4(a) (2002) (now included as an editorial note following
Guidelines § 1A1.1).  The Commission also specified that such
guidelines determinations were to be made within the statutory
maximums established by Congress in the U.S. Code.  See
Guidelines § 5G1.1; see also <u>Witte</u>, 515 U.S. at 401-02 (noting
that Guidelines channel the discretion of sentencing courts to
take into account related uncharged misconduct in imposing
sentence up to the statutory maximums, in a manner comparable to
pre-Guidelines practice).

     In <u>Mistretta</u>, 488 U.S. at 412, the Supreme Court upheld the
constitutionality of both the federal Guidelines and the
Sentencing Commission.  In the face of nondelegation and

---

     [4]    <u>See also</u> 28 U.S.C. 991(b)(1)(B) (Commission directed to
establish sentencing policies that "provide certainty and
fairness in meeting the purposes of sentencing" and that "avoid[]
unwarranted sentencing disparities among defendants with similar
records who have been found guilty of similar criminal conduct"
while maintaining "sufficient flexibility to permit
individualized sentences").

separation of powers challenges, it held that "Congress neither delegated excessive legislative power [to the Commission] nor upset the constitutionally mandated balance of powers among the coordinate Branches" by placing the Commission within the judicial branch.  Id. at 384-85, 412; see also id. at 412 (Constitution does not prohibit Congress "from calling upon the accumulated wisdom and experience of the Judicial Branch in creating policy on a matter uniquely within the ken of judges").[5]

With the overall constitutionality of the Guidelines established, the Court was then called upon to evaluate various of the Guidelines' real world applications.  Repeatedly, it upheld Guidelines sentences based on judge-found facts neither submitted to nor considered by a jury.  Indeed, in Watts, 519 U.S. at 153-54, the Court upheld an enhancement, under Guidelines § 2D1.1(b)(1), for possession of a gun in connection with a drug offense, even though the jury had acquitted the defendant of the firearms charge under 18 U.S.C. 924(c).  The Court noted that Guidelines § 1B1.3 -- the "relevant conduct" rule -- "directs sentencing courts to consider all other related conduct, whether

---

[5]    The courts of appeals have widely held that the Guidelines also comport with due process.  See, e.g., United States v. Govan, 152 F.3d 1088, 1094 (9th Cir. 1998); United States v. Piper, 35 F.3d 611, 620 (1st Cir. 1994); United States v. Spencer, 25 F.3d 1105, 1112 (D.C. Cir. 1994); United States v. Kerr, 13 F.3d 203, 207 (7th Cir. 1993); United States v. Guajardo, 950 F.2d 203, 206 (5th Cir. 1991); United States v. Delibac, 925 F.2d 610, 614-15 (2d Cir. 1991).

or not it resulted in a conviction." 519 U.S. at 153-54; see also Guidelines § 1B1.3, comment., backg'd ("conduct that is not formally charged or is not an element of the offense of conviction may enter into the determination of the applicable guideline sentencing range"). Applying that principle, the Court held that the sentencing court could consider the defendant's acquitted conduct (the firearms use) in determining his Guidelines sentencing range (for drug trafficking), so long as the acquitted conduct was proved by a preponderance of the evidence. 519 U.S. at 156-57; see id. at 154 ("sentencing enhancements do not punish a defendant for crimes of which he was not convicted, but rather increase his sentence because of the manner in which he committed the crime of conviction").

Other cases, too, have upheld Guidelines sentences based on related criminal conduct proved to a judge at sentencing, and not underlying a jury's verdict of guilt. See Witte, 515 U.S. at 399-400 (judge may impose higher Guidelines sentence on defendant convicted of possessing marijuana based on judge's finding that offender also engaged in uncharged cocaine conspiracy); Edwards, 523 U.S. at 514-15 (even if jury convicted defendant of cocaine-only conspiracy, judge may impose higher Guidelines sentence based on finding that defendant's conduct included crack-related activities); United States v. Dunnigan, 507 U.S. 87, 95-96 (1993) (court may impose Guidelines enhancement for perjury at trial

when sentencing defendant for offense of conviction).

In so ruling, the Court clearly viewed the Guidelines enhancements not as "statutory maximums" (requiring proof to a jury beyond a reasonable doubt), but as rules channeling the discretion of judges within the congressionally set maximums in the U.S. Code.  Indeed, the Court explicitly said as much in Edwards, which it notably cited with approval in Apprendi:

> Of course, petitioners' statutory and constitutional claims
> [that the court must base its Guidelines sentence
> exclusively on the cocaine-only facts found by the jury]
> would make a difference if it were possible to argue, say,
> that the sentences imposed exceeded the maximum that the
> statutes permit for a cocaine-only conspiracy.  That is
> because a maximum sentence set by statute trumps a higher
> sentence set forth in the Guidelines.

Edwards, 523 U.S. at 515; Apprendi, 530 U.S. at 497 n.21; see also Witte, 515 U.S. at 399-400 (although Guidelines enhancement for uncharged conduct resulted in higher Guidelines range than otherwise would have applied, range "still falls within the scope of the legislatively authorized penalty" and is thus constitutionally permissible); Mistretta, 488 U.S. at 396 (Guidelines "do not . . . establish[] minimum and maximum penalties" for crimes).

The Court has thus analyzed the Guidelines as channeling judicial discretion within congressionally set statutory maximums, not as creating lower statutory maximums for the offenses defined by Congress.  To upset that understanding now -- and either invalidate the Guidelines altogether, or hold that

9

every of the myriad upward adjustments, enhancements and departures in the Guidelines must be proved to a jury beyond a reasonable doubt -- would wreak havoc on the federal criminal justice system.  In 2002 (the most recent year for which statistics are available), 64,366 federal defendants were sentenced under the Guidelines.  2002 Source Book of Federal Sentencing Statistics.  At this moment, thousands of cases (at every stage of the proceedings, from indictment, plea negotiation, trial, sentencing and appeal) could be unsettled by such a ruling.

This Court should not place the system in such jeopardy and turn back the clock on years of sentencing reform -- especially where, as discussed below, this outcome is not mandated by Blakely.

**C.   The Commission-promulgated Federal Guidelines Operate Differently From Washington State's Legislatively Enacted Guidelines.**

Blakely involved two Washington state statutes, one broad and one specific, that set forth various maximum penalties for criminal offenses.  The first prescribes maximum sentences depending on whether a crime is a Class A felony (life maximum), Class B (ten years), or Class C (five years).  Wash. Rev. Code § 9A.20.021(1).  The second statute categorizes individual crimes by "seriousness level" which, along with an offender's criminal history score, yields a "presumptive sentencing range," which is

set forth in the state code in the form of a sentencing grid.
See Wash. Rev. Code § 9.94A.310(1) (Table 1) (now revised and
codified at Wash. Rev. Code § 9.94A.510).  The statute authorizes
a court to impose a sentence above the presumptive range if it
finds "substantial and compelling reasons justifying an
exceptional sentence."  Blakely, 2002 WL 1402697, at * 2.  The
statute includes an illustrative, non-exhaustive list of possible
aggravating factors justifying an exceptional sentence.  2004 WL
1402697, at * 2.

Blakely pleaded guilty to second-degree kidnapping involving
domestic violence and use of a firearm, a Class B felony.  The
sentencing court did not sentence him to the presumptive range
set by the statutory guidelines (49-53 months) for his crime, but
imposed an "exceptional sentence" of 90 months based upon its
finding that Blakely had acted with "deliberate cruelty" in
committing the offense.  2004 WL 1402697, at * 3-4.  Applying the
rule of Apprendi -- that "other than the fact of a prior
conviction, any fact that increases the penalty for a crime
beyond the prescribed statutory maximum must be submitted to a
jury, and proved beyond a reasonable doubt," 530 U.S. at 490 --
and relying on Apprendi and Ring v. Arizona, 536 U.S. 584 (2002),
the Court held that "the 'statutory maximum' for Apprendi
purposes is the maximum sentence a judge may impose solely on the
basis of the facts reflected in the jury verdict or admitted by

11

the defendant." 2004 WL 1402697, at * 4. Because "deliberate cruelty" was neither proved to a jury nor admitted by Blakely in his plea, the Court ruled that the enhanced sentence was unconstitutional. Id. at * 4, 6.

As in Apprendi and Ring, the legislative scheme in Blakely created two distinct statutory maximums. In Blakely, one very broadly classified (and provided broad maximum ranges for) offenses as A, B, or C felonies, and the other provided crime-by-crime guidelines ranges, from which a judge could depart upward based on his or her own findings of aggravating factors. See 2004 WL 1402697, at * 2.

That is not how the federal system operates. Congress has only created one set of statutory maximums for federal crimes. The Guidelines operate within those maximums, see Guidelines § 5G1.1, and set forth a host of factors (the current Manual runs some 491 pages) that courts are to consider, both in aggravation and mitigation, in individualizing a particular sentence. These factors correspond to those that judges have always taken into account -- such as the manner in which a crime was committed, the nature of the victim, the defendant's role in the offense, whether he obstructed justice at trial, and whether he accepted responsibility for his actions -- in fashioning sentences.

<u>Watts</u>, 519 U.S. at 152.[6]  As discussed above and as the Supreme
Court has indicated, the federal Guidelines were never intended
to operate on the same footing as the statutory maximums.
Indeed, that very assumption sits at the heart of the Guidelines:
"they do not bind or regulate the primary conduct of the public
or . . . establish[] minimum and maximum penalties for every
crime.  They do no more than fetter the discretion of sentencing
judges to do what they have done for generations -- impose
sentences within the broad limits established by Congress."
<u>Mistretta</u>, 488 U.S. at 396.

     Further, as <u>Mistretta</u> made clear, the Guidelines and the
Sentencing Commission that promulgates them are constitutionally
unique.  The Commission is not a legislative body but an
"independent commission in the judicial branch of the United
States."  28 U.S.C. 991(a).  In formulating the federal
Guidelines, "the Commission enjoys significant discretion."
<u>Mistretta</u>, 488 U.S. at 657.  The Guidelines are not statutes but
sentencing rules -- binding on sentencing courts by statute, <u>see</u>
<u>Mistretta</u>, 488 U.S. at 367; <u>Stinson</u>, 508 U.S. at 42 (citing 18
U.S.C. § 3553(b)) -- but nevertheless the unique product of a

---

     [6]     Indeed, in formulating the Guidelines, the Commission
canvassed prior sentencing practice and attempted to identify and
to assign weights to all the factors that judges traditionally
used in determining appropriate sentences.  See United States
Sentencing Commission, <u>Supplementary Report on the Initial
Sentencing Guidelines and Policy Statements</u> 16-17 (1987).

special delegation of authority.

Mistretta recognized that the substance of Congress's delegation to the Commission was essentially nonlegislative in character.  Like Congress's delegation of rulemaking authority to the judicial branch to prescribe rules of procedure and evidence, see, e.g., 28 U.S.C. 2072, the delegation to the Commission to make sentencing rules "simply leaves with the Judiciary what long has belonged to it."  488 U.S. at 396.  Or, put another way:

> Prior to the [Sentencing Reform] Act, the Judicial Branch, as an aggregate, decided precisely the questions assigned to the Commission: what sentence is appropriate to what criminal conduct under what circumstances.  It was the everyday business of judges . . . to evaluate and weigh the various aims of sentencing and to apply those aims to the individual cases that came before them.  The Sentencing Commission does no more than this, albeit basically through the methodology of sentencing guidelines, rather than entirely individualized sentencing determinations.

488 U.S. at 395; id. at 391 ("Commission's functions . . . are clearly attendant to a central element of the historically acknowledged mission of the Judicial Branch"); see also United States v. Kinter, 235 F.3d 192, 201 (4th Cir. 2000) ("the Commission's act of establishing sentencing ranges in the Guidelines is categorically different from the legislative act of setting a maximum penalty in a substantive criminal statute").

Blakely, of course, did not rest on the fact that the Washington guidelines scheme was legislatively enacted.  Nor, however, did it say that the source of the "statutory maximum" (whether congressional statute or commission guideline) for

Apprendi purposes is immaterial.  Imposing Apprendi's
requirements only when the legislature has made a defendant's
exposure to increased punishment contingent on findings of fact
that the legislature itself specifies vindicates Apprendi's
animating constitutional values.  The Sixth Amendment right to
trial by jury, and the due process right to insist on rigorous
proof to establish guilt of an offense, are fully protected when
there must be a jury finding beyond a reasonable doubt on the
facts that establish the legislatively prescribed maximum
punishment to which a defendant is exposed.  Democratically-
enacted statutes provide one of the most basic contracts between
a citizen and his or her government.  Far more than the
intricate, extensive, and many-layered determinations in the
Guidelines manual, the U.S. Code tells the people of the United
States what is and is not expected of them, and warns them of the
ultimate consequences should they refuse to follow the rules.  As
Justice Scalia said in Apprendi:

> I think it not unfair to tell a prospective felon that if he
> commits his contemplated crime he is exposing himself to a
> jail sentence of 30 years -- and that if, upon conviction,
> he gets anything less than that he may thank the mercy of a
> tenderhearted judge. . . Will there be disparities?  Of
> course.  But the criminal will never get more punishment
> than he bargained for when he did the crime, and his guilt
> of the crime (and hence the length of the sentence to which
> he is exposed) will be determined beyond a reasonable doubt
> by the unanimous vote of 12 of his fellow citizens.

530 U.S. at 498 (Scalia, J., concurring) (emphasis in original);

see also Harris v. United States, 536 U.S. 545, 562 (2002)

("[s]ince sentencing ranges came into use, defendants have not
been able to predict from the face of the indictment precisely
what their sentence will be; the charged facts have simply made
them aware of the 'heaviest punishment' they face if convicted.
Judges, in turn, have always considered uncharged 'aggravating
circumstances' that, while increasing the defendant's punishment,
have not swelled the penalty above what the law has provided for
the acts charged.") (plurality opinion) (citations, internal
quotation marks omitted).

    In sum, the Supreme Court decisions before <u>Blakely</u> uniformly
upheld the Guidelines system as written: a tightly integrated
system of sentencing rules for judges to apply based on their
findings of fact.  <u>Blakely</u> explicitly declined to express a view
on the Federal Sentencing Guidelines.  This Court accordingly
should continue to adhere to the law as it stands.  <u>See</u> <u>United</u>
<u>States</u> v. <u>Pineiro</u>, 2004 WL 1543170 (5th Cir. July 12,
2004)(<u>Blakely</u> does not extend to Guidelines); <u>see</u> <u>also</u> <u>United</u>
<u>States</u> v. <u>Penaranda</u>, No. 03-1055 (2d Cir. July 12, 2004)(in
banc)(recognizing in dictum, in certifying to Supreme Court
question, <u>inter</u> <u>alia</u>, of whether a judge can find facts at
sentencing to support enhancement under Guidelines, that "the
distinct administrative provenance of the federal Sentencing
Guidelines may place them outside the ambit of the <u>Blakely</u>
principle); <u>United States</u> v. <u>Booker</u>, No. 03-4225 (7th Cir. July

16

9, 2004)(Easterbrook, J., dissenting); <u>United States</u> v. <u>Mooney</u>,
No. 02-3388 (8th Cir. July 23, 2004)(Murphy, J., dissenting from
the decision to declare the Guidelines unconstitutional).

**II. IF THE COURT HOLDS THAT <u>BLAKELY</u> DOES PRECLUDE APPLICATION OF THE GUIDELINES BASED ON JUDGE-MADE FACTUAL FINDINGS IN A GIVEN CASE, THEN THE SENTENCING COURT IN THAT CASE SHOULD IMPOSE SENTENCE WITHIN THE STATUTORY MAXIMUM AND MINIMUM, WITH DUE REGARD TO THE SENTENCES PRESCRIBED BY THE GUIDELINES FOR SIMILAR OFFENSES AND OFFENDERS**

> **A. Guidelines Enhancements And The Procedures For Applying Them Are Not Severable From The Guidelines As A Whole**

If the Court disagrees with the government's argument and
holds that <u>Blakely</u> applies to the Guidelines - <u>see</u>, <u>e.g.</u>, <u>United
States v. Ameline</u>, No. 02-30326 (9th Cir. July 21, 2004)(<u>Blakely</u>
applies to Guidelines but Guidelines are severable); <u>Booker</u>, No.
03-4225 (Seventh Circuit holds <u>Blakely</u> applies to Guidelines
without deciding severability); <u>Mooney</u>, No. 02-3388 (8th Circuit
panel majority holds <u>Blakely</u> applies to Guidelines and directs
district courts to treat Guidelines as wholly unconstitutional
but with discretion to use the Guidelines as advisory)- then the
Court must decide how sentencing is to be conducted.  The
Guidelines contain many "enhancement" provisions -- <u>i.e.</u>,
provisions that provide for a higher offense level or that
authorize an upward departure from a defendant's Guidelines
sentencing range based on particular factual findings.  If
<u>Blakely</u> applies to the Guidelines, and absent a waiver by the
defendant, those enhancement provisions (except for provisions

17

based on prior convictions, see Almendarez-Torres v. United States, 523 U.S. 224 (1998)), generally could be applied in a given case only if, contrary to the current system of judge-made findings, the necessary facts have been found by a jury beyond a reasonable doubt.  Provisions that reduce a defendant's sentencing range or authorize a downward departure, however, could still be applied, as intended, by a court at sentencing based on findings by a preponderance of the evidence.  Harris v. United States, 536 U.S. 545 (2002); see also Blakely, 2004 WL 1402697, at * 5 (rule does not apply to cases involving "sentencing scheme[s] that imposed a statutory minimum if a judge found a particular fact"); McMillan v. Pennsylvania, 477 U.S. 79 (1986).

A requirement that enhancing -- but not reducing -- facts have to be submitted to the jury and proven beyond a reasonable doubt would distort the operation of the sentencing system in a manner that would not have been intended by Congress or the Sentencing Commission.  Accordingly, rather than attempting to apply the Guidelines with a Blakely overlay of jury factfinding, a court should simply conclude that the parts of the Guidelines system that are unconstitutional (finding of sentence-enhancing facts by the judge) are inseverable from the Guidelines as a whole.  The result is that, in any case in which Blakely precludes judicial factfinding under the Guidelines, the

Guidelines as a whole would be invalidated as a binding set of rules governing sentences that must be imposed.

1.  When a court finds some parts of a statutory scheme unconstitutional, the court must inquire into the severability of the remaining provisions.  The court of course "should refrain from invalidating more of the statute than necessary." Alaska Airlines, Inc. v. Brock, 480 U.S. 678, 684 (1987).  Accordingly, "[w]henever an act of Congress contains unobjectionable provisions separable from those found to be unconstitutional, it is the duty of th[e] court to so declare, and to maintain the act in so far as it is valid." Alaska Airlines, 480 U.S. at 684. But where the remaining provisions are not severable, they too are rendered invalid by the holding of unconstitutionality.

The question whether the unconstitutional provisions are severable turns on an assessment of whether Congress would have enacted the provisions that remain constitutional absent the others.  See Minnesota v. Mille Lacs Band of Chippewa Indians, 526 U.S. 172, 191 (1999) ("The inquiry into whether a statute is severable is essentially an inquiry into legislative intent."). As the Supreme Court has stated the rule, "[u]nless it is evident that the Legislature would not have enacted those provisions which are within its power, independent of that which is not, the invalid part may be dropped if what is left is fully operative as law." Buckley v. Valeo, 424 U.S. 1, 108 (1976) (quoting Champlin

19

Refining Co. v. Corporation Comm'n, 286 U.S. 210, 234 (1932));

INS v. Chadha, 462 U.S. 919, 932, 934 (1983) (same; noting that

what remains after severance of unconstitutional legislative veto

is "'fully operative' and workable administrative machinery" and

therefore is severable).

Under those principles, the "relevant inquiry in evaluating

severability is whether the statute will function in a manner

consistent with the intent of Congress" after the

unconstitutional provisions have been severed.  Alaska Airlines,

480 U.S. at 685.  If the statute will not function in a manner

Congress intended, then the entire statute must be eliminated,

and the basic policy choices in designing a new, constitutional

scheme left up to Congress.  A court has no authority to "rewrite

[the] statute and give it an effect altogether different" from

what Congress enacted.  Railroad Retirement Bd. v. Alton R. Co.,

295 U.S. 330, 362 (1935).

2.  When Congress enacted the Sentencing Reform Act, there

is no doubt that the system Congress had in mind was one based on

determinations by courts, not juries, of facts necessary for

sentencing.  And there is no doubt that the Commission structured

the Guidelines for use in such a system.  Eliminating the parts

of the Guidelines scheme that would be unconstitutional if

Blakely applies to the Guidelines would leave a remainder that is

not severable -- i.e., that could not operate in the manner that

20

Congress intended.  For that reason, in any case in which
Blakely-type procedures would have to be applied to determining
facts necessary for Guidelines enhancements, the Guidelines as a
whole would no longer be applicable as binding authority.

    a.  Application by judges.  Congress intended the Guidelines
to be applied by judges at sentencing, not by juries.  That is
explicit in Congress's basic command to the Sentencing Commission
to promulgate a set of Guidelines.  28 U.S.C. 994(a)(1) ("The
Commission . . . shall promulgate and distribute to all courts
 . . . guidelines . . . for use of a sentencing court in
determining the sentence to be imposed in a criminal case.")
(emphasis added).  Those Guidelines to the sentencing court shall
"take . . . into account," insofar as relevant, "the
circumstances under which the offense was committed which
mitigate or aggravate the seriousness of the offense" and "the
nature and degree of the harm caused by the offense," 28 U.S.C.
994(c)(2) and (3), and the defendant's "role in the offense," 28
U.S.C. 994(d)(9).  Congress accordingly specified that the
"sentencing court" -- not the jury -- shall make the factual
determinations on those factors.

    The provisions for appeal similarly establish Congress's
intent that courts -- not juries -- should make the factual
determinations necessary to apply the Guidelines.  Under 18
U.S.C. § 3742(d), courts of appeals "shall give due regard to the

opportunity of the district court to judge the credibility of the
witnesses, and shall accept the findings of fact of the district
court unless they are clearly erroneous and . . . shall give due
deference to the district court's application of the guidelines
to the facts" (emphasis added).  Moreover, Congress provided for
courts on appeal to determine "whether the sentence . . . was
imposed in violation of law" or "was imposed as a result of an
incorrect application of the sentencing guidelines," 18 U.S.C.
3742(c); those standards are obviously directed at sentencing
courts, and the statute makes no provision for review of jury
verdicts.  Similarly, Congress provided for equal rights of
appeal for the government and the defendant, 18 U.S.C. 3742(a)
and (b), although government appeals of jury factual findings at
a criminal trial are ordinarily impossible under the Double
Jeopardy Clause.  United States v. Martin Linen Supply Co., 430
U.S. 564 (1977).  See also Comprehensive Crime Control Act of
1983, Sen. Rep. No. 98-225, at 65 (projected guidelines "are
designed to structure judicial sentencing discretion") (emphasis
added); id. at 155 (noting importance of appellate review, which
is "crucial to the functioning of the sentencing guidelines").[7]

---

[7] See also Guidelines § 1B1.2 (provision clearly directed to
courts (not juries) to "[d]etermine" facts relevant to
application of the Guidelines); Guidelines § 1B1.2 appl. n.2
(Guidelines manual "directs the court, once it has determined the
applicable guideline . . . under § 1B1.2(a) to determine any
applicable specific offense characteristics (under that
guidelines) and any other applicable sentencing factors pursuant

b.  <u>Preponderance of the evidence</u>.  Under the Guidelines, sentencing determinations are made by judges by a preponderance of the evidence; the reasonable-doubt standard applicable to jury findings is entirely absent.  As the Commission explained, "use of a preponderance of the evidence standard is appropriate to meet due process requirements and policy concerns in resolving disputes regarding application of the guidelines to the facts of a case."  Guidelines § 6A1.3 comment.  <u>See</u> <u>also</u> <u>United States</u> v. <u>Watts</u>, 519 U.S. 148, 155 (1997) (per curiam) (noting "the significance of the different standards of proof that govern at trial and sentencing" under the Guidelines).

c.  <u>Evidence</u>.  Like any sentencing determination, determinations on Guidelines enhancements were intended to be made by the court based on evidence that may not be admissible before a jury under ordinary rules of evidence.  See 18 U.S.C. 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."); Sentencing Guidelines § 6A1.3 (sentencing court in resolving disputed issues "may consider relevant information without regard to its admissibility under the rules of evidence

_____

to the relevant conduct definition in § 1B1.3.") (emphasis added); Fed. R. Crim. Pro. 32(i) (setting forth procedure for <u>court</u> to resolve issues under the Guidelines at sentencing).

applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy"); Fed. R. Evid. 1101(d)(3) (Federal Rules of Evidence not applicable in sentencing proceedings).

3.  A system under which Guidelines enhancements (but not reductions) had to be submitted to a jury for determination beyond a reasonable doubt would contravene the clear intent of Congress and the Sentencing Commission on each of the above points.  To be sure, a sentencing system that incorporated jury findings on some factual issues with judicial findings on others could be created.  But it is not "within the province of the courts to fashion a remedy," United States v. Jackson, 390 U.S. 570, 579 (1968), that would depart so dramatically from Congress's intent (and that of the Sentencing Commission) in the unified Sentencing Guidelines as promulgated.  Although "[s]tatutes should be construed to avoid constitutional questions," this "interpretative canon is not a license for the judiciary to rewrite language enacted by the legislature." United States v. Albertini, 472 U.S. 675, 680 (1985).  To do so, "while purporting to be an exercise in judicial restraint, would trench upon the legislative powers vested in Congress by Art. I, § 1 of the Constitution." Id.  As the district court recently concluded in United States v. Croxford, No. 2:02-CR-00302PGC, 2004 WL 1462111 at * 10  (D. Utah June 29, 2004) (Cassell, J,),

adding a jury overlay to application of Sentencing Guidelines
would "effectively require[] the courts to redraft the sentencing
statutes and implementing Guidelines." <u>See</u> <u>also</u> <u>Mooney</u>.

a.  First, there has never been any determination by
Congress, the Sentencing Commission, or any other body that the
sentences that resulted from such a patchwork system would be the
just and appropriate sentences that satisfied the goals of
sentencing as set forth by Congress.  Congress set forth a number
of goals in the Sentencing Reform Act.  It provided that "[t]he
purposes of the United States Sentencing Commission are to . . .
establish sentencing policies and practices for the Federal
criminal justice system that . . . assure the meeting of the
purposes of sentencing as set forth in section 3553(a)(2) of
title 18, United States Code", to "provide certainty and fairness
in meeting the purposes of sentencing [and] avoiding unwarranted
sentencing disparities" and to "reflect . . . advancement in
knowledge of human behavior as it relates to the criminal justice
process."  28 U.S.C. 991(b); <u>see</u> 18 U.S.C. 3553(b).

The Sentencing Commission designed the Guidelines, including
the sentencing ranges, to provide for sentences that satisfied
those goals <u>when the Guidelines were applied by judges under the</u>
<u>existing system</u>.  Neither Congress nor the Commission has ever
made any determination that the sentences that resulted from
applying enhancements (but not reductions) only if they were

first proven to a jury beyond a reasonable doubt would be just or
appropriate sentences for the crimes at issue.  They might be too
low (because some enhancements simply could not as a practical
matter be proven to a jury, because the beyond-a-reasonable-doubt
standard is too high, or for other reasons) or they might be too
high (because presumably a reviewing court could not overturn a
jury verdict on the applicability of an enhancing fact with the
same ease that it could overturn a judge's finding on that fact).
But, either way, there is no reason to believe that applying the
Guidelines in this way would result in sentences that the
Commission (or Congress) believed were appropriate.  See
Sentencing Guidelines § 1B1.11 ("The Guidelines Manual in effect
on a particular date shall be applied in its entirety.").

     b.  Second, among the most important goals of the Sentencing
Reform Act was "the need to avoid unwarranted sentence
disparities among defendants with similar records who have been
found guilty of similar conduct."  18 U.S.C. 3553(a)(6).
Relatedly, the Guidelines themselves embody a system under which
defendants are punished based in large measure on the real facts
of the case, not merely the offense that the prosecutor has
charged.  If the Guidelines are applied with a Blakely overlay
requiring submission of enhancing (but not other) facts to the
jury, then those features of the system cannot be realized.  It
would likely be impossible, as a practical matter, to charge and

prove to a jury beyond a reasonable doubt all enhancing factors
in all cases.  The result would be much greater disparity among
defendants whose criminal conduct was in fact quite similar.
Moreover, the result would be to change the Guidelines' intended
creation of a system of reliance in part on the defendant's real
offense into a system in which the court is precluded in large
part (as to enhancing factors, at least) from relying on the
defendant's real offense and would have to rely on the charged
offense instead.

c.  In short, the scheme that would result from trying to
superimpose the jury system on enhancements (but not reductions)
under the Guidelines would put in place a scheme that is so
different from what Congress enacted (and the Sentencing
Commission thought it was promulgating) that it would in essence
be judicial lawmaking, not effectuation of congressional intent.
In those circumstances, the proper remedy is to permit Congress
to make the policy choices necessary to put into place a
constitutional sentencing system.

4.  The practical difficulties with a system in which
enhancements (but not reductions) under the Guidelines could be
applied only based on jury findings beyond a reasonable doubt
would be severe, and they demonstrate that neither Congress nor
the Sentencing Commission would have enacted the resulting system
or intended that it should be applied.

a.  <u>Complexity of submitting Guidelines enhancements to the</u>
<u>jury</u>.  Because the factors that go into a Guidelines sentence
were intended to be applied by judges, not juries, they are not
well-suited to submission to juries.  The result of attempting to
submit them to juries could be extraordinary complexity, followed
by lengthy and extensive appellate proceedings to determine
whether the jury had been correctly instructed.

Typically, juries have to make a few factual determinations
on the limited number of elements of an offense in order to
determine whether a defendant is guilty.  Those elements have
usually been refined through years of judicial decisions, and the
instructions given to juries have become standardized.  The
sudden addition of numerous Guidelines enhancements to the list
of facts that juries must decide could dramatically complicate
the task of instructing juries and obtaining valid verdicts.  As
Judge Cassell recently explained in <u>Croxford</u>, "the list of
findings contemplated by the Guidelines is extensive and nuanced,
modified and interpreted regularly in numerous court opinions,
creating a task much better suited to judges than to juries."
2004 WL 1462111, at * 10.  A bank robbery case, for example,
could require

> a jury to determine factors regarding the nature of the
> offense [under Guidelines § 2B3.1] such as (1) the nature of
> the institution robbed; (2) the presence of, brandishing of,
> or other use of, a firearm; (3) the making of a death
> threat; (4) the presence of ordinary, serious, or permanent
> or life threatening bodily injury; (5) any abduction; (6)

any physical restraint; (7) the taking of a firearm; (8) the taking of drugs; and (9) the value of property taken; and further factors [under Chapter 3B of the Guidelines] regarding the defendant's role in the offense such as (10) aggravating role; (11) mitigating role; (12) abuse of a position of trust; (13) use of a special skill; and (14) use of a minor; and further factors  [under Chapter 3A of the Guidelines] regarding the victim such as (15) hate crime motivation; (16) vulnerable victim; (17) official victim; (18) terroristic motivation; and further factors concerning (19) obstruction of justice [under § 3C1.1]; and (20) acceptance of responsibility [under § 3E1.1] -- not to mention another dozen or so grounds for departing upward or downward from the general guidelines calculations.

Croxford, 2004 WL 1462111, at * 17.  The jury would have to be instructed correctly on each of these factors, and the jury's verdict would presumably be subject to reversal on appeal if the instructions were incorrect.  See also United States v. Medas, No. 03 CR 1048 (E.D.N.Y. July 1, 2004).

b.  Difficult or impossible application of some Guidelines provisions.  Many provisions of great importance under the Guidelines simply could not be effectively implemented if enhancing factors had to be charged in an indictment and submitted to the jury.

Obstruction of justice.  The obstruction of justice enhancement, under Guidelines § 3C1.1, is frequently applied when a defendant testifies falsely at trial.  Yet at the time of indictment for the offense, the government will not know whether the defendant will testify falsely or commit other obstructive acts, and it will therefore likely be impossible to indict the defendant on the facts necessary for this enhancement or submit

29

the issue of obstruction to the jury.

Late-discovered factors.  There are many other enhancing facts in individual cases that the government learns of only at or near trial or when a presentence report is prepared.  Those facts too would apparently have to be omitted from the sentencing calculation, because they could not be included in the indictment and thus could likely not be submitted to the jury.

Guidelines version.  Under Guidelines § 1B1.11, "[t]he court shall use the Guidelines Manual in effect on the date that the defendant is sentenced."  That provision could not be put into effect if the Guidelines provision at issue has changed between the time of jury deliberations and the time of sentencing.  The jury would have been instructed on the Guidelines version in effect at that time, not at the time of sentencing.

Relevant conduct.  Another very serious problem would arise under the very complex "relevant conduct" rules under Guidelines § 1B1.3.  The Guidelines provide that base offense level and offense characteristics should be determined not only on the basis of the offense of conviction, but also on the basis of all of the defendant's "relevant conduct."  That includes, inter alia, acts undertaken by others that are "aided, abetted, counseled, commanded, induced, procured or willfully caused by the defendant" and, in the case of conspiracy offenses, "all reasonably foreseeable acts and omissions of others in

30

furtherance of the jointly undertaken criminal activity."
Guidelines § 1B1.3(a)(1).  Aside from the difficulty of
instructing a jury on the quite complex issues arising in
applying these definitions, see Guidelines § 1B1.3 comment.
(eight-page commentary on relevant conduct rules), requiring jury
determinations on relevant conduct could take a criminal trial
into areas far afield from the core question that is suitable for
jury resolution -- whether the defendant committed the particular
crime with which he was charged.

Upward departures.  Upward departures that are not based on
specific Guidelines provisions provide another example.  Such
departures are permissible based on "an aggravating . . .
circumstance of a kind, or to a degree, not adequately taken into
consideration by the Sentencing Commission in formulating the
guidelines that should result in a sentence different from that
described [in the Guidelines]."  18 U.S.C. 3553(b); see
Guidelines § 5K2.0.  It is difficult to see how a jury could be
instructed to make a finding about whether such a circumstance
existed, and any instruction that could be envisioned would face
a very substantial objection that it is too vague to satisfy Due
Process standards.

Grouping rules. Under Chapter 3D of the Guidelines, courts
are to "group" similar counts and then sentence the defendant
according to the offense level applicable to each resulting group

31

-- a process that may result in a higher offense level based on the decision whether or not to group certain counts. <u>See</u> Guidelines §§ 3D1.3 and 3D1.4. But the decision whether to group counts depends in part on very complex factual determinations, which were clearly not designed for submission to a jury. <u>See</u>, <u>e.g.</u>, Guidelines § 3D1.2(a) (group when counts "involve the same victim and the same act or transaction"), § 3D1.2((b) (group when counts "involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan"); Guidelines § 3D1.2 comment. (explanation of grouping rules). In addition, the decision whether to group counts may increase the total offense level (and thus the total sentence). Thus, it may be that, if <u>Blakely</u> applies to the Guidelines, grouping (or not grouping) could be applied only with appropriate jury instructions and submission of the factual issues to the jury. Those instructions could be exceptionally difficult for the court to formulate and for the jury to follow.

        c.  <u>Absurd results</u>.  An attempt to apply the Guidelines subject to <u>Blakely</u> would also lead to absurd results in many cases, with sentencing courts bound to impose sentences that are far too short by any reasonable standard.  That is not merely because sentencing decisions generally have never been required to be made under the beyond-a-reasonable-doubt standard and

32

because requiring such proof of facts that enhance -- but not those that reduce -- the defendant's sentence would inevitably skew the result.  In addition, the court in many cases already tried (or to which the defendant has already pleaded guilty) would be required to impose an absurdly low sentence because of the structure of the Guidelines provisions themselves.

A good example would be the sentences that would result for those convicted of fraud and awaiting sentence.  Under the Guidelines, conviction of fraud results in a base offense level of 6 or 7 under Guidelines § 2B1.1(a).  That translates into a sentencing range of 0-6 months' imprisonment (slightly higher for those with multiple prior convictions).  The enhancements for amount of loss under Section 2B1.1(b)(1), however, can add up to 30 levels to the defendant's offense level, and many other enhancements under Section 2B1.1 may further increase sentence. Most of those enhancements, however, would not ordinarily have been charged in the indictment or found by the jury, and they accordingly would be unavailable at sentencing if the Guidelines were applied with the Blakely overlay requiring a jury verdict on enhancing factors.  Accordingly, most defendants who commit fraud -- even multimillion dollar frauds with large numbers of victims and serious consequences  for society -- would likely be limited to sentences of little or no jail time if the Guidelines could be applied only with Blakely-type procedures for enhancing factors.

33

See also United States v. Shamblin, Cr. No. 2:03-00217, 2004 WL
1468561, at * 10 (S.D.W.Va. June 30, 2004) (reduction in drug
case from 240 months' imprisonment to "almost certainly
inadequate" 12-month sentence under Blakely).

That absurd result too demonstrates that the Guidelines
would not "function in a manner consistent with the intent of
Congress" if a court attempted to apply them with the Blakely
overlay.  Alaska Airlines, 480 U.S. at 685.  Accordingly, if
Blakely applies to the Guidelines in a given case, the provisions
of the current sentencing system that would be unconstitutional
are not severable from the remainder of the Guidelines.

**B.    The Guidelines Remain Fully Applicable In Cases In
Which Blakely Procedures Are Not Necessary**

For the reasons given above, the Guidelines as a whole are
not severable from the procedures -- factual determinations by
the judge, not the jury -- that Congress and the Sentencing
Commission intended to be used in applying them.  Accordingly, in
any case in which the Guidelines would require an upward
enhancement of the defendant's sentencing range without a jury
determination, the Guidelines as a whole could not
constitutionally be applied as mandatory sentencing rules.  See
Croxford, 2004 WL 1462111, at * 11.  On the other hand, in cases
in which the Guidelines could constitutionally be applied as
written without submitting any enhancing factors to the jury, the
Guidelines remain binding on sentencing courts.

34

If it applies to the Guidelines, <u>Blakely</u> governs only a subset of the factual determinations that have to be made at sentencing -- those facts (other than the fact of a prior conviction) that are necessary for increases in the defendant's sentencing range above what would have been applicable based on the jury's factual findings alone.[8]  In cases in which the court determines, based on a traditional application of the Guidelines, that no such enhancements are applicable, it is entirely consistent with the Constitution for the Guidelines to be applied as written and intended.  Accordingly, under 18 U.S.C. 3553(b), courts would remain bound in such cases to sentence the defendant in accordance with the Guidelines.

Some such cases will be those in which the jury's verdict establishes that the defendant is guilty of an offense and the court finds (based on a preponderance of the evidence) that there are no enhancements applicable under the particular facts of the case.  In such cases, nothing stands in the way of the statutory directive that courts impose sentence in accordance with the Guidelines by applying the base offense level and any applicable factors that would reduce the sentence.  Similarly, in cases in

---

[8] Because judges may still, post-<u>Blakely</u>, find the fact of a prior conviction, see <u>Blakely</u>, 2004 WL 1402697, at * 4, the court could still constitutionally make most of the factual findings necessary to assign a defendant to a criminal history category under Chapter 4 of the Guidelines, even if those factual findings increased the defendant's sentencing range.

which the jury necessarily decided facts in rendering its verdict that establish the applicability of a Guidelines enhancement and the court finds no other enhancements applicable, the court should compute the sentence under the Guidelines.

The Guidelines also would remain applicable in any case (usually involving a guilty plea) in which the defendant has either stipulated to the facts necessary for application of the Guidelines or has waived his right to a jury trial on those facts.  As the Court explained in Blakely, "[w]hen a defendant pleads guilty, the State is free to seek judicial sentence enhancements so long as the defendant either stipulates to the relevant facts or consents to judicial factfinding."  2004 WL 1402697, at * 8.  Indeed, "[e]ven a defendant who stands trial may consent to judicial factfinding as to sentence enhancements." Ibid.  In short, because "nothing prevents a defendant from waiving his Apprendi rights," id., application of the Guidelines in full continues to be fully constitutional -- and therefore required by Section 3553(b) -- where the defendant has done so.

**C.    Where The Guidelines Cannot Constitutionally Govern The Court's Sentencing Decision, The Sentencing Court Must Nonetheless Give Due Regard To The Guidelines Sentence**

In cases in which the court determines that the defendant's Guidelines sentence turns on enhancements that have not been found by the jury, the Guidelines could not constitutionally be applied as mandatory rules of law governing the sentence.  In

36

such cases, the court should sentence the defendant between the
minimum and maximum sentences prescribed by statute, and it may
find whatever facts it believes necessary to impose a sentence
within that range.  The Court in Blakely noted that indeterminate
sentencing schemes, in which the judge "may implicitly rule on
those facts he deems important to the exercise of his sentencing
discretion," remain fully constitutional.  2004 WL 1402697, at *
7.  Accordingly, the court would be free to make (by a
preponderance of the evidence) whatever factual determinations
are necessary in imposing sentence in a case in which the
Guidelines could not constitutionally govern the sentence.

Even in such cases, however, the court would not be free
simply to ignore the Guidelines.  Under 18 U.S.C. 3553(b),

> [i]n the absence of an applicable sentencing guideline in
> the case of an offense other than a petty offense, the court
> shall . . . have due regard for the relationship of the
> sentence imposed to sentences prescribed by guidelines
> applicable to similar offenses and offenders, and to the
> policy statements of the Sentencing Commission.

Congress accordingly recognized that there would be cases in
which the Guidelines would not be directly applicable.  Even in
such cases, however, Congress directed that the court should give
"due regard" to the applicable Guidelines provisions and policy
statements.  That constitutionality of that provision is not
called into question by Blakely, and there is every reason to
believe that Congress would have intended that it remain
applicable even in cases in which the Guidelines themselves

37

cannot directly govern the sentence.  Accordingly, even in cases in which the Guidelines cannot constitutionally govern the sentence, the sentencing court should consider the sentencing range applicable under the most analogous Guidelines provisions and give that range "due regard" in imposing sentence.

Similarly, the statutes providing for appellate review of sentences would continue to govern, even in cases in which the Guidelines themselves cannot constitutionally govern the sentence.  The government, for example, could still appeal on the ground that the sentence "was imposed for an offense for which there is no sentencing guideline and is plainly unreasonable," 18 U.S.C. 3742(b), and the court of appeals should reverse the sentence if it finds that the sentence was so imposed, 18 U.S.C. 3742(f)(2).  It is "plainly unreasonable" for a district court to fail to give "due regard" to the Guidelines, as required by Section 3553(b).  Accordingly, a court of appeals' determination of whether the sentence should be reversed under Section 3742(f)(2) should place significant weight on whether such regard was given.

Finally, even aside from those statutory commands, "[t]he Sentencing Commission has carefully developed the Guidelines over many years, and the Guidelines generally produce sentences that accord with the public's view of just punishment."  Croxford, 2004 WL 1462111, at * 13.  Accordingly, the Guidelines provide

"useful instruction on the appropriate sentence," <u>id</u>., and sentencing courts should take them into careful consideration in imposing sentence even in cases in which, due to <u>Blakely</u>, the Guidelines could not be applied as binding authority that governs the sentence.

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should determine that <u>Blakely</u> does not apply to the Guidelines and determine the defendant's sentence, including applicable enhancements, as Congress intended and as the Supreme Court has upheld in prior cases. In the alternative, in the event the Court determines that <u>Blakely</u> does apply, the Court should determine that the provisions for enhancements cannot be severed from the remainder of the Guidelines and should determine that the Guidelines cannot be applied as binding authority, although the Court should nonetheless take them into consideration in sentencing.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney


By:

<u>/s/ Robert E. Richardson</u>
ROBERT E. RICHARDSON
Assistant U.S. Attorney

## CERTIFICATE OF SERVICE

Suffolk, ss.                          Boston, Massachusetts
                                      July 23, 2004

    I, ROBERT E. RICHARDSON, hereby certify that I have caused a true copy of the foregoing to be served by electronic filing on Martin Richey, Federal Defender Office, 408 Atlantic Avenue, 3rd Floor, Boston, MA 02210.

                              /s/ Robert E. Richardson
                              ROBERT E. RICHARDSON
                              Assistant U.S. Attorney